**FILED**

APR 2 7 2005

APR 27 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| TAMIKA SANDIFER and DAVID SLOAN, on their own behalf and on behalf of their minor son, DAVID SLOAN, JR., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, OFFICER COREY FLAGG, and UNKNOWN CHICAGO POLICE OFFICERS, <br><br> Defendants. | **05C 2522** <br><br> JUDGE JOHN W DARRAH <br><br> MAGISTRATE JUDGE KEYS <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

NOW COME Plaintiffs, TAMIKA SANDIFER and DAVID SLOAN, by their attorneys, LOEVY & LOEVY, and complaining of Defendants, CITY OF CHICAGO, OFFICER COREY FLAGG and UNKNOWN CHICAGO POLICE OFFICERS (collectively, the "Defendant Officers"), state as follows:

### Introduction

1. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

### Jurisdiction and Venue

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

3. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within district.

### The Plaintiffs

4.   Plaintiff, Tamika Sandifer is a 24 year-old Chicago resident. Ms. Sandifer, who works in a pharmacy and is studying to be a nurse, lives with her boyfriend, Plaintiff David Sloan, and their four-year-old son, minor Plaintiff David Sloan, Jr., on Chicago's South Side.

### Defendant Corey Flagg

5.   Defendant Corey Flagg is one of four Chicago Police Officers recently arrested and charged by federal agents in connection with their involvement in the City's drug trade.

6.   Specifically, as is set forth in a federal criminal complaint recently filed by the Federal Bureau of Investigation, over the past year Defendant Flagg and at least three other Chicago Police Officers repeatedly used their position and authority as police officers to rob drug dealers and sell the illegal drugs themselves. In effect, these officers become uniformed drug dealers and, by dint of their positions, operated for a period of time above the law.

7.   The FBI has alleged that Defendant Flagg was the "primary corrupt police associate" of another Chicago Police Officer involved in the scheme and that he "participated in nearly all of the planning and execution of the rip-off and attempted rip-offs" for which the officers were arrested.

8.   The *modus operandi* of these individuals was nearly always the same: they would work together and, using resources available to Chicago Police Officers (such as equipment, vehicles, firearms, etc.) trail, detain, and rob suspected drug

2

dealers. Their aim was always the same: to steal drugs and sell them themselves for personal profit.

### December 15, 2004

9. On or about the late afternoon of December 15, 2005, David Sloan, along with his four year-old son, David Sloan, Jr., were driving to get dinner on the City's South Side.

10. Shortly after leaving his apartment, Mr. Sloan was pulled over by two plain-clothes Chicago Police Officers who were driving an unmarked car. These officers immediately ordered Mr. Sloan to exit his vehicle, and after he was searched and handcuffed they placed him in their car.

11. Mr. Sloan was breaking no laws or doing anything to justify this treatment. At no point did these officers provide an explanation for their actions.

12. Shortly thereafter, Defendant Flagg pulled up to the scene in an unmarked car, entered the car where Mr. Sloan had been placed, and sat down next to him.

13. Mr. Sloan recognized Defendant Flagg as a police officer who had patrolled the neighborhood in which Mr. Sloan used to live. Defendant Flagg immediately began to question Mr. Sloan regarding the location of drugs he believed to be in Mr. Sloan's possession. Mr. Sloan repeatedly informed Defendant Flagg that he was not involved in the drug trade and was not in possession of any drugs.

14. Angered by his response, Defendant Flagg had the officers who pulled Mr. Sloan over transport him and his four year-old son back to their apartment. Once there, Defendant

3

Flagg took the keys from Mr. Sloan's car, incorrectly assuming the ring contained a key to his apartment.

### Ms. Sandifer

15. At approximately the same time that Mr. Sloan was being questioned by Defendant Flagg, Tamika Sandifer, Mr. Sloan's girlfriend who lives with him and their four year-old son, arrived home from work.

16. Shortly after she arrived home, Ms. Sandifer heard somebody attempting to insert keys into the apartment's back door lock. When she approached the door, Ms. Sandifer could see a figure attempting to open it.

17. When Ms. Sandifer asked the figure to identify himself, the individual (whom she would later learn was Defendant Flagg) stated only that he was a Chicago Police Officer and demanded entry. When Ms. Sandifer asked if he had a search warrant, Defendant Flagg refused to answer and instead again ordered her to open the door.

18. Ms. Sandifer refused and, growing scared, went to the phone to call 911. However, before she could dial the number, Defendant Flagg broke through the door and entered the apartment.

19. Defendant Flagg immediately hand-cuffed Ms. Sandifer. A short time later, a second Chicago Police Officer entered the apartment.

20. During this time, Defendant Flagg repeatedly questioned Ms. Sandifer about the location of drugs which he insisted were in the apartment. When Ms. Sandifer told him that

4

there were no drugs in the apartment, Defendant Flagg threatened to arrest her and have DCFS take her son away.

21. Thereafter, additional plain-clothes Chicago Police Officers arrived in the apartment and began an intensive search. In the course of this search, which lasted well over an hour, these officers damaged the apartment, overturning furniture and emptying drawers and cupboards.

22. During the middle of the search, Ms. Sandifer's four-year old son was taken from the unmarked squad car (where he had been with his father) to the apartment, where Ms. Sandifer remained detained. The child screamed in terror throughout the ordeal.

23. At one point during the search an unknown officer showed Ms. Sandifer a gun, stating falsely that he "found" it in a bathroom wastebasket.

24. After the search was completed, Defendant Flagg and a Chicago Police Department Sergeant (both of whom were aware that the officers had no authority to enter or search the apartment) attempted to force Ms. Sandifer to sign a form "consenting" to the search. Ms. Sandifer refused to do so.

25. Mr. Sloan was eventually transferred to a district police station, where he was questioned further by Defendant Flagg. Defendant Flagg appeared to be especially interested in individuals whom he believed were involved in the drug trade.

26. When Mr. Sloan told him that he had no drugs and no information regarding drug dealers, Defendant Flagg

5

threatened him with prosecution. Because he did not, and could not, provide Defendant Flagg with any of the requested information, Mr. Sloan was eventually falsely charged with unlawful use of a weapon.

27. As a result of the charges, Mr. Sloan was detained at Cook County Jail for nearly a week before being released on bond. Following the filing of a motion to dismiss (which regarded much of the conduct discussed above), but prior to the date on which it was to be heard, the charge against Mr. Sloan was dropped in a manner indicative of innocence.

## Count I -- 42 U.S.C. § 1983

### False Arrest/Unlawful Detention

28. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

29. As described more fully above, the Defendant Officers falsely arrested and unlawfully detained Plaintiffs without legal justification.

30. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with wilful indifference to Plaintiffs' constitutional rights.

31. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

32. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

6

a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiffs; specifically, Chicago Police Officers accused of constitutional violations can be confident that the Office of Professional Standards and/or Internal Affairs Division will not investigate those accusations in earnest and will refuse to recommend discipline even where the Officer has engaged in such misconduct;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiffs in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report

misconduct committed by other officers, such as the misconduct at issue in this case;

   e. The City of Chicago has failed to act to remedy the patterns of abuse describe in the preceding subparagraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

   f. As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career;

   g. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same sort of misconduct twenty times in row, the Office of Professional Standards and/or Internal Affairs Division are forbidden by the City from considering those allegations if they are deemed unsustained; and

   h. The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against police officers for violations of civil rights.

   33. As a result of the above-described wrongful infringement of their rights, as well as the City's policy and

8

practice, Plaintiffs have suffered pain and injury, as well as emotional distress.

34. The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, CITY OF CHICAGO, is liable for their actions.

### COUNT II -- State Law Claim
### False Imprisonment

35. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

36. Plaintiffs were seized, arrested, placed into a squad car, and incarcerated by the Defendant Officers, despite their knowledge that there was no probable cause for doing so.

37. In the manner described in the preceding paragraphs, the Defendant Officers unlawfully restrained Plaintiffs' freedom of movement about by imprisoning them in a squad car, the apartment, and at the Police Station. In this manner, Plaintiffs' freedom of movement was unduly and unlawfully restricted.

38. The actions of the Defendant Officers set forth above were undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

39. As a result of the above-described wrongful conduct, Plaintiffs have suffered pain and injury, as well as emotional distress.

40. The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their

employment and under color of law such that their employer, CITY OF CHICAGO, is liable for their actions.

## COUNT III -- State Law Claim

### Malicious Prosecution

41. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

42. In the manner described more fully above, Plaintiffs were improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff Sloan's favor in a manner indicative of their innocence.

43. Specifically, the Defendant Officers accused Plaintiff Sloan of criminal activity knowing those accusations to be without probable cause and made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.

44. The Defendant Officers' statements to the prosecutors were made with knowledge that they were false and perjured. In so doing, they fabricated evidence and withheld exculpatory information.

45. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

46. As a proximate result of this misconduct, Plaintiff Sloan suffered injuries, including but not limited to emotional distress.

47. The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for their actions.

### Count IV -- State Law Claim

### Respondeat Superior

48. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

49. In committing the acts alleged in the preceding paragraphs, the Defendant Officers were members and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

50. Defendant City of Chicago is liable as principal for all torts committed by its agents.

### COUNT V -- State Law Claim

### Indemnification

51. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

52. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

53. The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiffs, TAMIKA SANDIFER and DAVID SLOAN, on their own behalf and on behalf of their minor son, DAVID SLOAN, Jr., respectfully request that this Court enter judgment in their favor and against Defendants, CITY OF CHICAGO, OFFICER COREY FLAGG and UNKNOWN CHICAGO POLICE OFFICERS, awarding compensatory damages and attorneys' fees, along with punitive damages against the Defendant Officers in their individual capacities, as well as any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiffs, TAMIKA SANDIFER and DAVID SLOAN, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

_____
Attorneys for Plaintiffs

Arthur Loevy
Jon Loevy
Jon Rosenblatt
Russell Ainsworth
LOEVY & LOEVY
312 North May St
Suite 100
Chicago, IL 60607
(312) 243-5900

12